T.C. Memo. 2008-221

UNITED STATES TAX COURT

BIANCA GROSS, DONOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9693-06.                    Filed September 29, 2008.

<u>Kathryn Keneally</u> and <u>Jeffrey M. Marks</u>, for petitioner.

<u>Gerard Mackey</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  By notice of deficiency dated February 22, 2006 (the notice), respondent determined a deficiency in petitioner's 1998 Federal gift tax of $120,583.22.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1998.

The principal issue for decision is whether petitioner's transfer of securities to a family limited partnership

constituted indirect gifts of a portion of those securities to the other members of the partnership.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time she filed the petition, petitioner resided in the State of New York.

Background

Petitioner, a widow, has two adult children, Diane Gross Marks and Marian Gross.

Over the years, petitioner, an investor, has bought and sold securities. By 1998, she had acquired a sizable portfolio of publicly traded securities. Earlier, following her husband's death in 1996, she had begun to consider her own mortality and her desire to involve her daughters in managing what someday would become theirs (i.e., her securities portfolio). Because she deemed one of her daughters extravagant, she considered a trust arrangement, but she rejected that because her other daughter declined to serve as a trustee. She settled on a family limited partnership, which she believed would encourage her daughters to work together and learn from her experience while preserving in her (as sole general partner) control over the partnership's assets. She had several discussions with her daughters about the partnership arrangement, culminating in an agreement among

petitioner and her daughters by July 15, 1998, to form a limited partnership. She and her daughters agreed to the following:

-- Each would contribute a small amount of cash to the partnership ($100 from petitioner and $10 from each daughter), and petitioner would contribute securities.

-- As the general partner and majority owner, petitioner would retain ultimate control over management of the partnership, including the authority to make decisions about sales, purchases, and other dispositions of the partnership's assets, and petitioner would have exclusive discretion concerning the timing and amounts of distributions to the partners.

-- The daughters would not be able to transfer their interests in the partnership without petitioner's approval.

-- The daughters could not withdraw from the partnership, nor were they entitled to a return of their capital contributions.

-- The daughters could not force a dissolution of the partnership.

-- Each partner's interest in the partnership would be based on the amount of her contribution of capital to the partnership.

Dimar Holdings L.P.

On July 15, 1998, petitioner caused a certificate of limited partnership for "Dimar Holdings L.P." (the Dimar certificate and Dimar or the partnership, respectively) to be filed with the New York Department of State. She also caused notice of the formation of Dimar as a limited partnership to appear in New York newspapers, and, on October 14, 1998, she caused an affidavit of publication to be filed with the New York Department of State.

On July 31, 1998, petitioner's daughters each drew checks for $10 to the order of Dimar. On November 16, 1998, petitioner drew a check for $100 to the order of Dimar.

From the beginning of October 1998 through December 4, 1998, petitioner transferred ownership of shares of stock from her name to Dimar's name (the Dimar securities). The Dimar securities were mostly, if not all, common shares of well-known, publicly traded companies. As the redesignated stock certificates were returned to her, she recorded the transfers in a notebook, titled "Dimar", that she maintained to record various transactions with respect to Dimar. By mid-December 1998, petitioner had recorded Dimar's portfolio on a computer program that tracked the performance of the portfolio on a continuous basis. The fair market value of the portfolio on December 15, 1998, was $2,158,646, while the value of all of Dimar's assets on that date was $2,158,766. The $120 difference was due to the cash contributions from petitioner and her two daughters.

Dimar filed a Form 1065, U.S. Partnership Return of Income, for 1998 signed by petitioner as general partner. The return shows that Dimar commenced business on July 15, 1998.

The Deeds of Gift

Petitioner and her daughters assembled for a family holiday either on or shortly before December 15, 1998. At that meeting (the December 15 meeting), petitioner and each of her daughters executed a document styled "Deed of Gift". Among other things, each such document provides that petitioner is transferring to the named daughter a 22.25-percent interest as a limited partner in Dimar.

The Dimar Partnership Agreement

Also at the December 15 meeting, petitioner and her daughters executed a document styled "Limited Partnership Agreement of Dimar Holdings L.P." (the Dimar agreement). Among other things, the Dimar agreement provides that petitioner is the general partner, the daughters are limited partners, the purposes of the partnership include managing the partnership's investments in securities, limited partners are restricted both in disposing of their partnership interests and in withdrawing capital from the partnership, distributions are at the discretion of the general partner, the powers of the partnership are to be exercised by or under the direction of the general partner, and, except as specifically provided in the agreement or as required by law, the limited partners are to take no part in the management of the business and affairs of the partnership.

The Gift Tax Return

Petitioner filed a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 1998 (the Form 709) on which she reported December 15, 1998, gifts of a 22.25-percent limited partnership interest in Dimar to each of her daughters. Petitioner reported that the value of each of those gifts was $312,500. A schedule attached to the Form 709 contains information pertinent to the gifts. It includes a list of the Dimar securities under the heading "Securities Contributed to Partnership on 12/15/98". It states that the market value of those securities on December 15, 1998, was $2,158,646. It includes computations of the partners' capital accounts, showing initial contributions of $100, $10, and $10 for petitioner and her daughters, respectively. It shows that petitioner's capital account was credited in the amount of $2,158,646 because of her contribution of the Dimar securities to the partnership and was then debited in the amount of $960,598 because of her gifts ($480,299 each) to her daughters, whose capital accounts were credited because of the gifts in the amount of $480,299 each. The schedule also shows that the reported value of each gift results from applying an approximately 35-percent discount to a prediscount value of $480,299 for each gift.[1] The 35-percent

---

[1] The pre-discount value of $480,299 for each gift apparently is derived by applying 22.25 percent to the reported fair market value of the Dimar securities on Dec. 15, 1998 ($480,299 = 22.25% x $2,158,646).

discount is attributed to "minority interest", "lack of control", and "lack of marketability".

The Notice

Following an examination of the Form 709, respondent issued the notice. The notice explains that respondent's adjustments giving rise to the deficiency in tax resulted from his determination that petitioner made indirect gifts to each of her daughters of securities when she contributed the Dimar securities to Dimar rather than direct gifts of 22.25-percent interests in Dimar. The notice claims that the value of each indirect gift was $480,299.

OPINION

I.  Introduction

We must determine whether petitioner made indirect gifts of securities to her daughters. Respondent's theory of the case begins with his supposition that, on December 15, 1998, three events occurred:  (1) Petitioner and her daughters formed Dimar (a family limited partnership), (2) each daughter acquired a 22.25-percent limited partnership interest in Dimar, and (3) petitioner then contributed the Dimar securities to the partnership (with 22.25 percent of the value of the contribution, $480,299, being credited to each daughters' capital account).  On that basis, respondent concludes that petitioner made an indirect gift of $480,299 worth of securities to each daughter.[2]

---

[2]  Taking account of petitioner's and the daughters' cash contributions of $100, $10, and $10, respectively, respondent
(continued...)

Petitioner's theory of the case differs from respondent's principally with respect to the timing of the key events. She argues that Dimar was formed on July 15, 1998, the Dimar securities were all contributed by December 4, 1998, and the gifts (which were of partnership interests) occurred long enough thereafter (on December 15, 1998) that no indirect gift of securities can be supposed. Petitioner also relies on a stipulation that, if the Court finds that, on December 15, 1998, petitioner made direct gifts of limited partnership interests to the daughters, then, taking into account applicable discounts, the value of each gift was $312,500, as petitioner reported on the Form 709.

We shall first describe the indirect gift theory. We shall then discuss whether it has any application to the facts before us and resolve any remaining valuation questions.

## II. Indirect Gifts

Section 2501(a) imposes a tax on an individual's transfer of property by gift during the year. The tax is imposed on the value of the gifts made during the year. See sec. 2502(a). The value of a gift of property is the value thereof on the date of transfer. Sec. 2512(a). The value of a gift of property is determined by the value of the property passing from the donor and not necessarily by the measure of enrichment resulting to the

---

[2](...continued)
calculates the indirect gift to each daughter to be $480,315. But in the notice, he calculated the indirect gifts to be $480,299, and he does not assert an increased deficiency.

donee from the transfer. Sec. 25.2511-2(a), Gift Tax Regs. Where property is transferred for less than adequate and full consideration in money or money's worth (hereafter, simply, adequate consideration), then the excess of the value of the property transferred over the consideration received is generally deemed a gift. Sec. 2512(b). The gift tax applies whether the gift is direct or indirect. Sec. 2511(a). Section 25.2511-1(h)(1), Gift Tax Regs., illustrates an indirect gift made by a shareholder of a corporation to the other shareholders of the corporation. The shareholder transfers property to the corporation for less than adequate consideration. The regulation concludes that, generally, such a transfer represents gifts by the shareholder to the other individual shareholders to the extent of their proportionate interests in the corporation. Similarly, if a partner transfers property to a partnership for less than adequate consideration, the transfer generally will be treated as an indirect gift by the transferor to the other partners. See, e.g., Shepherd v. Commissioner, 115 T.C. 376, 389 (2000), affd. 283 F.3d 1258 (11th Cir. 2002). Indeed, in affirming the Tax Court, the Court of Appeals said: "[G]ifts to a partnership, like gifts to a corporation, are deemed to be indirect gifts to the stakeholders 'to the extent of their proportionate interests' in the entity. See * * * [sec. 25.2511-1(h)(1), Gift Tax Regs.]." Shepherd v. Commissioner, 283 F.3d at 1261.

III.  Discussion

    A.  Introduction

Whether petitioner made indirect gifts of securities to her daughters depends on whose version of events we accept:  Did all of the relevant events occur on December 15, 1998, as respondent claims, or was Dimar formed and funded a substantial time before as petitioner claims?  We begin by examining New York partnership law.  Respondent's position is that execution of a partnership agreement is a condition precedent to the formation of a limited partnership under New York law, and, since the Dimar agreement was not executed until December 15, 1998, Dimar did not come into existence until that date.  Petitioner counters that Dimar was properly formed as a limited partnership on July 15, 1998, when petitioner caused a certificate of limited partnership for Dimar to be filed with the New York Department of State, or, alternatively, if Dimar did not qualify as a limited partnership until December 15, 1998, then it was a general partnership under New York law as of July 15, 1998.

While the parties skirmish over the date or dates on which petitioner contributed the Dimar securities to Dimar, we think that, if petitioner is right that Dimar was established on July 15, 1998, she is also right that the securities were contributed by December 4, 1998.  Because we think that she is right on both counts, we conclude that petitioner did not make indirect gifts of securities to her daughters.  We also agree with petitioner's valuation conclusion.  Our reasons follow.

B. <u>Formation of Dimar</u>

1. <u>Introduction</u>

New York limited partnerships formed after July 1, 1991, are subject to the Revised Limited Partnership Act. N.Y. Pship. Law secs. 121-101 through 121-1300 (McKinney 1998). In pertinent part, N.Y. Pship. Law sec. 121-201, "Certificate of limited partnership", provides:

> (a) In order to form a limited partnership the general partners shall execute a partnership agreement, and a certificate of limited partnership shall be executed in accordance with section 121-204 of this article. The certificate * * * shall be filed with the department of state in accordance with section 121-206 of this article * * *
>
>      *     *     *     *     *     *     *
>
> (b) A limited partnership is formed at the time of the filing of the initial certificate of limited partnership with the department of state or at any later time not to exceed sixty days from the date of filing specified in the certificate of limited partnership. The filing of the certificate shall, in the absence of actual fraud, be conclusive evidence of the formation of the limited partnership as of the time of filing or effective date if later, except in an action or special proceeding brought by the attorney general.

Additionally, subsection (c) of N.Y. Pship. Law sec. 121-201 contains a publication requirement that must be satisfied within 120 days after the filing of the certificate of limited partnership.

2. <u>Discussion</u>

Petitioner caused the Dimar certificate to be filed with the New York Department of State on July 15, 1998, and neither party argues that the publication requirement found in N.Y. Pship. Law

sec. 121-201(c) is unsatisfied. Petitioner and her daughters did not, however, execute the Dimar agreement until December 15, 1998. As stated, respondent argues that execution of a partnership agreement is a condition precedent to the formation of a limited partnership pursuant to New York partnership law. See N.Y. Pship. Law sec. 121-201(a). He argues, therefore, that Dimar did not come into existence until December 15, 1998.[3] Petitioner argues that New York partnership law attaches no limitation to the time in which the partnership agreement must be executed, and she directs us to the language in N.Y. Pship. Law sec. 121-201(b) providing that, except in circumstances not applicable here: "The filing of the certificate shall * * * be conclusive evidence of the formation of the limited partnership as of the time of filing or effective date if later". Noting that the publication requirement found in N.Y. Pship. Law sec. 121-201 cannot be satisfied until after the certificate of limited partnership is filed, petitioner argues: "The Act thus contemplates that a limited partnership may be formed before all statutory formalities are completed." Continuing that the Dimar certificate did not contain a delayed effective date, petitioner

---

[3] Respondent argues on brief that, because the Dimar agreement was signed more than 60 days after the Dimar certificate was filed, see N.Y. Pship. Law sec. 101-201(b) (McKinney 1998), it "is * * * questionable whether Dimar was validly formed under New York law." The argument that Dimar was not formed is inconsistent with the basis of respondent's adjustment in the notice that petitioner made an indirect gift to her daughters when she contributed the Dimar securities to the partnership. Nor has respondent pled an alternative basis for the deficiency he determined. We do not further consider the argument that Dimar was not validly formed.

argues that Dimar was formed on July 15, 1998, the date the certificate was filed.

Neither party makes a compelling argument for their interpretation of New York partnership law, and we have found no persuasive authority on our own. Since we agree with petitioner that, were we to conclude that the Dimar agreement was not timely executed so as to constitute Dimar a limited partnership on July 15, 1998, we must consider whether New York law would deem petitioner and her daughters to have formed a general partnership on that date, we shall proceed to that consideration.

Under New York law, when parties seeking to form a limited partnership do not satisfy the requirements necessary to form a limited partnership, they may be deemed to have formed a general partnership if their conduct indicates that they have agreed, whether orally and whether expressly or impliedly, on all the essential terms and conditions of their partnership arrangement. Peerless Mills, Inc. v. AT&T Co., 527 F.2d 445, 449 n.1 (2d Cir. 1975); Canet v. Gooch Ware Travelstead, 917 F. Supp. 969, 994 (E.D.N.Y. 1996). We agree with petitioner that the record contains sufficient evidence for us to conclude that, at the time petitioner caused the Dimar certificate to be filed on July 15, 1998, she and her daughters had agreed to form a partnership essentially on the terms set forth in the Dimar agreement. Petitioner and her daughters gave uncontradicted testimony that they had agreed upon the essential terms and conditions of their partnership arrangement just before the filing of the Dimar

certificate. We have set forth those terms and conditions in our findings of fact, and they are consistent with the terms and conditions of the Dimar agreement. The daughters made their $10 cash contributions on July 31, 1998, and petitioner began contributing securities to the partnership no later than November 10, 1998, and made her $100 cash contribution on November 16, 1998. She contributed the bulk of the Dimar securities to the partnership by the end of November 1998. Petitioner kept a record of her contributions in a notebook titled "Dimar", and she kept computer records of the performance of the Dimar portfolio. Petitioner signed an income tax return for Dimar on April 5, 1999, reporting that Dimar commenced business on July 15, 1998. Together, petitioner's and her daughters' testimony and their conduct indicate to us that, on July 15, 1998, they agreed to all the essential terms of their partnership arrangement, and we so find. If they failed to satisfy the requirements necessary to form a limited partnership, we deem them to have formed a general partnership on that date and on those terms.

3. Conclusion

Dimar was formed as a partnership on July 15, 1998.

C. Contribution of the Dimar Securities

We have found that, from the beginning of October 1998 through December 4, 1998, petitioner transferred the Dimar securities from her name to Dimar's name. Respondent can have no quarrel with that finding since it is based on a stipulation. Nevertheless, respondent argues that, since Dimar was not formed

until December 15, 1998, petitioner could not have contributed the securities to an entity that did not yet exist.  Respondent buttresses his argument by pointing out that a schedule attached to the Form 709 includes a list of Dimar securities under the heading "Securities Contributed to the Partnership on 12/15/98".  Petitioner relies on the argument that Dimar was formed on July 15, 1998, whether as a limited or general partnership, and the schedule in question was included with the Form 709 solely in support of the valuation of the partners' capital accounts on December 15, 1998.  Petitioner argues that the schedule was clearly intended to be a list of the securities (all contributed by petitioner before December 15, 1998) held by Dimar on that date and was not intended to show that the securities had, in fact, been contributed on that date.  Considering the Form 709 as a whole, petitioner is convincing as to the purpose of the schedule, and we have already concluded that Dimar was formed on July 15, 1998.[4]  We conclude that petitioner contributed the Dimar securities to Dimar during a period commencing in early October 1998 and ending on December 4, 1998.

_____

[4]  In further support of his claim that the Dimar securities were not contributed to the partnership until Dec. 15, 1998, respondent points out that a schedule attached to the Form 709 filed by petitioner shows that as of Dec. 15, 1998, petitioner's capital account reflected the full value of the Dimar securities notwithstanding that the partnership had enjoyed $41,107 of net appreciation in its portfolio that should in part have been reflected in the values of the daughters' capital accounts. Petitioner responds that, after petitioner's contribution of the Dimar securities and before she made gifts of limited partnership interests to the daughters, the daughters' combined interest in the appreciation was slight (less than 0.1 percent), and the failure to allocate the appreciation may be ignored.  We agree.

D.  Indirect Gifts

    1.  Introduction

Respondent argues that petitioner made indirect gifts to her daughters because she contributed the Dimar securities to Dimar for inadequate consideration.  She received inadequate consideration, respondent argues, because, proportionate to her interest in the partnership, only 55.50 percent of the value of the securities was credited to her capital account.  She made indirect gifts to her daughters, respondent continues, because, proportionate to their interests in the partnership, the remaining value of the securities was credited to their capital accounts (22.25 percent apiece).  Respondent assumes that petitioner's transfer of interests in Dimar to her daughters either preceded her contribution of the Dimar securities to Dimar or should be deemed to have preceded that contribution under the step transaction doctrine.  Petitioner argues that she made no indirect gift of any portion of the Dimar securities to her daughters since (1) 100 percent of the value of the Dimar securities was credited to her capital account well in advance of her gifts of interests in Dimar to her daughters, and (2) no grounds exist to reorder those steps under the step transaction doctrine.

    2.  Indirect Gifts in Fact

In Estate of Jones v. Commissioner, 116 T.C. 121, 123-127 (2001), the decedent had formed two family limited partnerships with his children and had contributed assets to the partnerships

in exchange for substantially all of the limited partnership interests in the partnerships. His contributions were credited to his capital accounts. On the day the partnerships were formed, petitioner gave to his children substantially all of his interests in the partnerships. The decedent reported the gifts for Federal gift tax purposes, discounting the values of the gifts substantially on account of lack of marketability and for other reasons. In the case before us (the estate tax case), the Commissioner argued that the sizable discounts applied to the gifts indicated that the decedent had made taxable gifts upon contributing his property to the partnerships (the gifts being equal in value to the difference between the value of the property contributed and the value of the limited partnership interests received). We found that the contributions of property were properly reflected in the capital accounts of the decedent, and the value of the other partners' interests was not enhanced by the decedent's contributions. Id. at 128. Therefore, we held, the contributions did not constitute taxable gifts. Id.

In Shepherd v. Commissioner, 115 T.C. at 379-381, the taxpayer transferred real property and stock to a newly formed family partnership in which he was a 50-percent owner and his two sons were each 25-percent owners. Rather than allocating contributions to the capital account of the contributing partner, the partnership agreement provided that any contributions would be allocated pro rata to the capital accounts of each partner according to ownership. Because the contributions were reflected

partially in the capital accounts of the noncontributing partners, the value of the noncontributing partners' interests was enhanced by the contributions of the taxpayer. Therefore, we held, the transfers to the partnership were indirect gifts by the taxpayer to his sons of undivided 25-percent interests in the real property and stock. Id. at 389.

We have concluded supra in section III.B.2. and C. of this report that Dimar was formed as a partnership on July 15, 1998, and that petitioner transferred the Dimar securities to Dimar during a period commencing in early October 1998 and ending on December 4, 1998. Petitioner testified, and her daughters confirmed, that, as she contributed the Dimar securities to Dimar, her percentage interest in the partnership increased and theirs decreased. A schedule attached to the Form 709 shows that petitioner's capital account was increased because of her contribution of the Dimar securities to the partnership and was then decreased because of her gifts to her daughters, whose capital accounts were increased on account thereof. The parties agree that petitioner made gifts to her daughters on December 15, 1998.

The contributions of property in the case at hand are similar in form to the contributions in Estate of Jones and are distinguishable in form from the gifts in Shepherd. Petitioner made a series of contributions of securities to Dimar and received increasing partnership interests in return. All of the contributions were reflected in her capital account, and the

value of her daughters' capital accounts was not enhanced because of her contributions. After she contributed the Dimar securities to the partnership, she made gifts of interests in the partnership to her daughters.

Before concluding that form and substance agree, however, we shall consider respondent's step transaction argument.

### 3. Indirect Gifts Under the Step Transaction Doctrine

The step transaction doctrine embodies substance over form principles; it treats a series of formally separate steps as a single transaction if the steps are in substance integrated, interdependent, and focused toward a particular result. Where an interrelated series of steps are taken pursuant to a plan to achieve an intended result, the tax consequences are to be determined not by viewing each step in isolation, but by considering all of them as an integrated whole. Holman v. Commissioner, 130 T.C. __, __ (2008) (slip op. at 26) (citations and quotation marks omitted).

Holman is a family limited partnership case in which the taxpayers made the first of a series of gifts of limited partnership interests 6 days after forming and funding the partnership with shares of a publicly traded company. Id. at __ (slip op. at 27-28). We described the Commissioner's argument with respect to that gift as being that the taxpayers' "formation and funding of the partnership should be treated as occurring simultaneously with * * * [the gift] since the events were interdependent and the separation in time between the first two

steps (formation and funding) and the third (the gift) served no purpose other than to avoid making an indirect gift under section 25.2511-1(h), Gift Tax Regs." Id. at __ (slip op. at 27). Without intending to draw any bright lines, we rejected the Commissioner's argument because of our conclusion that the taxpayers bore a real economic risk of a change in value of the partnership for the 6 days that separated their transfer of the shares to the partnership and the gift. Id. at __ (slip op. at 30). We concluded: "[W]e shall not disregard the passage of time and treat the formation and funding of the partnership and the subsequent gifts as occurring simultaneously under the step transaction doctrine." Id. at __ (slip op. at 31).

We reach the same result here, where (1) 11 days passed between petitioner's conclusion of her transfer of the Dimar securities to the partnership and her gifts of interests in the partnership to her daughters, and (2) the Dimar securities were mostly, if not all, common shares of well-known companies.[5] The step transaction doctrine does not cause us to change the actual order of the transactions before us and conclude that petitioner made indirect gifts of 22.25 percent of the value of the Dimar

---

[5] We caution, however, in terms similar to those as we used in Holman v. Commissioner, 130 T.C. ___, ___ n.7 (2008) (slip op. at 31): The real economic risk of a change in value arises from the nature of the Dimar securities as heavily traded, relatively volatile common stocks. We might view the impact of a 11-day hiatus differently in the case of another type of investment; e.g., a preferred stock or a long-term Government bond.

securities to each of her daughters.[6]  The form of the transactions here in question accords with their substance.

    4.  Conclusion

    On December 15, 1998, petitioner made gifts of interests in Dimar to her daughters and did not make indirect gifts of portions of the Dimar securities that she had contributed to the partnership.

---

[6]  We have deemed that, if petitioner and her daughters failed to satisfy the requirements necessary to form a limited partnership, they formed a general partnership on July 15, 1998. Sec. III.B.2. of this report, supra.  Respondent's position is that Dimar came into existence, as a limited partnership, when petitioner and her daughters signed the Dimar agreement on Dec. 15, 1998.  The parties have not explored the tax consequences of the Dimar agreement being effective to convert Dimar from a general to a limited partnership.  Sec. 708(b)(1) provides the circumstances under which a partnership will be considered as terminated.  If Dimar were considered as terminated as a general partnership before being reconstituted under the Dimar agreement as a limited partnership, then respondent might argue that petitioner received the Dimar securities from the terminated general partnership before contributing them to the reconstituted limited partnership while, at the same time, making gifts of limited partnership interests to her daughters.  See Senda v. Commissioner, 433 F.3d 1044 (8th Cir. 2006) (relying on the step transaction doctrine in affirming the Tax Court's finding that taxpayers made indirect gifts of shares of stock to partners in family limited partnerships since transfers of securities to partnerships and gifts of partnership interests were integrated and simultaneous transactions), affg. T.C. Memo. 2004-160. Respondent has perhaps not made that argument because he has ruled that, generally, a partnership does not terminate upon its conversion from a general to a limited partnership.  Rev. Rul. 84-52, 1984-1 C.B. 157; see also Rev. Rul. 95-37, 1995-1 C.B. 130 (treating the conversion of an interest in a domestic partnership into an interest in a domestic L.L.C. that is classified as a partnership as a partnership to partnership conversion).

E.  <u>Valuation</u>

The parties have stipulated that, if petitioner is found by the Court to have made gifts of limited partnership interests in Dimar to her daughters on December 15, 1998, then petitioner was correct in reporting the value of each of those gifts as $312,500 on the Form 709.  We have found only that, on December 15, 1998, petitioner made gifts of interests (not necessarily limited partnership interests) in Dimar to her daughters.  Petitioner's expert witness gave uncontradicted testimony that, if Dimar were a general rather than a limited partnership, and petitioner and her daughters had agreed that the daughters would be subject to the same limitations as set forth in the Dimar agreement, viz, neither daughter could dispose of all or any portion of her interest in the partnership, neither would have the right to withdraw either her capital or participation in the partnership or to receive distributions from the partnership, and neither would have control of management or the business and affairs of the partnership, then the fair market value of a 22.25-percent interest in the partnership received by each of the daughters would be worth the same as a 22.25-percent limited partnership interest in a limited partnership governed by the Dimar agreement.  He pegged that value as $277,868.  Petitioner states, however, that she is not claiming a value for the gifts any less than the value ($312,500) reported on the Form 709.

We have found that, by the time petitioner caused the Dimar certificate to be filed on July 15, 1998, she and her daughters had agreed to form a partnership essentially on the terms set forth in the Dimar agreement.  On the basis of petitioner's expert witness's uncontradicted testimony, we find that, if, on December 15, 1998, Dimar was a general partnership, the fair market value of the interest in the partnership that petitioner gave to each of her daughters was $312,500.

IV.  Conclusion

To reflect the foregoing,

Decision will be entered for petitioner.