147 P.3d 624 (2006)
In re the MARRIAGE OF Donna Lynn ZIER, Appellant, and
Kelly Glen Zier, Respondent.
No. 24367-2-III.
Court of Appeals of Washington, Division 3.
November 21, 2006.
*626 Mary Elizabeth Schultz, Attorney at Law, Spokane, WA, for Appellant.
Jeff Alan Morris, Scott A. Morris, Morris & Morris PS, Spokane, WA, for Respondent.

PUBLISHED OPINION
BROWN, J.
¶ 1 This is a marriage dissolution property division dispute between Donna Zier and Kelly Zier. Ms. Zier's appeal centers on whether the trial court erred in deciding the parties converted separate property stock into community property when they executed a status agreement despite a stockholder's agreement restriction. The evidence shows the parties knowingly, and without objection from key shareholders, executed the status agreement and considered it binding between them. Because the trial court did not abuse its discretion in making a just and equitable distribution of all property before the court when ordering an equal division of the stock, we affirm.

FACTS
¶ 2 The Ziers were married in 1986 and separated in 2002. In 1992, they moved to Spokane where Ms. Zier's parents, Judith and Bill Williams, the founders and majority shareholders of Telect, Inc., resided. For estate planning purposes and prior to the Ziers' relocation, the Williamses began gifting shares of stock to their grandchildren, children, and their children's spouses.
¶ 3 Before receiving shares, the recipients were required to sign a stockholders' agreement, promising not to "sell, transfer, assign, pledge, or otherwise encumber to another stockholder, or anyone else, any of his shares of stock in the Company unless such action is preapproved by the affirmative vote of Stockholders who own at least sixty-six and two-thirds percent (66 2/3%)." Exhibit P-114 (Article VII(A)). The agreement further stated any lifetime transfer "shall be void." Exhibit P-114 (Article (I)).
¶ 4 The Williamses gifted stock to Mr. Zier and Ms. Zier separately, with Ms. Zier receiving the larger portion. Ms. Zier purchased additional stock with dividends from the existing stock. Telect grew very profitable, increasing the Ziers' financial worth.
¶ 5 Concerned about estate tax ramifications, the Ziers contacted Telect's corporate counsel, Scott Simpson. Mr. Simpson offered to draft a status agreement similar to *627 an agreement between Ms. Zier's brother, Wayne Williams, Telect's CEO and significant shareholder, and his wife. Mr. Simpson explained the favorable tax consequences to the Ziers of converting their separately owned shares of stock to community property. Mr. Simpson testified he expressly warned the Ziers the type of agreement they were contemplating would immediately convert their separate property stock to community property. He advised the Ziers to assume all of their Telect stock would be divided equally should they get divorced. Mr. Simpson counseled them not to sign the agreement if there was a problem in their marriage. Ms. Zier refutes this.
¶ 6 On June 11, 1998, the Ziers signed an Agreement as to the Status of Telect Stock, which stated "all shares of stock of TELECT, INC., a Washington corporation, owned by either of them or standing in the name of either of them, shall be, and is hereby declared to be, the community property of the two of them." Exhibit R-215. Mr. Simpson did not advise either party to obtain independent counsel or that he might have a conflict of interest. The Williamses later issued 9,339,405 shares of Telect stock to the Ziers in both names. These shares were in exchange for the Ziers forgiving a $1,494,304 debt owed by Telect.
¶ 7 After separating in December 2002, Ms. Zier petitioned for dissolution in September 2003. At the time of the decree, Ms. Zier had 6,509,586 Telect shares and Mr. Zier had 1,194,978 shares. The court characterized all the stock as community property. The court found the parties' status agreement evidenced their intent to gift to the community all shares owned by them at the time the document was signed. Ms. Zier unsuccessfully requested reconsideration. On Mr. Zier's request for an order dividing the stock, the court awarded all shares in Mr. Zier's name to him, all shares in Ms. Zier's name to her, and the 9,339,405 shares in both names divided with 7,327,007 to Mr. Zier and 2,012,399 to Ms. Zier. The result was an equal division of the disputed shares. Ms. Zier appealed.

ANALYSIS
¶ 8 The issue is whether the trial court erred in making a fair and equitable property division after characterizing the parties' Telect stock as community property.
¶ 9 Initially, Mr. Zier challenges Ms. Zier's standing to challenge the validity of the status agreement. He also alleges the issue is raised for the first time on appeal. The doctrine of standing generally prohibits a party from asserting another person's rights. Timberlane Homeowners Ass'n, Inc. v. Brame, 79 Wash.App. 303, 307, 901 P.2d 1074 (1995). RAP 2.5(a) generally precludes a party from raising an issue for the first time on appeal. Since the parties developed an extensive record of how they created and treated the status agreement between themselves, and since we are not deciding corporate or third party rights, we analyze the status agreement evidence in the fair and equitable division context as did the trial court.
¶ 10 In a marriage dissolution, all property, both community and separate, is before the court for distribution. Friedlander v. Friedlander, 80 Wash.2d 293, 305, 494 P.2d 208 (1972). The trial court has broad discretion in awarding property under RCW 26.09.080, and this court will reverse only upon the appellant's showing of a manifest abuse of discretion. In re Marriage of Kraft, 119 Wash.2d 438, 450, 832 P.2d 871 (1992). A court abuses its discretion if it is exercised on untenable grounds or in an unreasonable manner. In re Marriage of Gillespie, 89 Wash.App. 390, 398-99, 948 P.2d 1338 (1997).
¶ 11 We review de novo a trial court's property characterizations. In re Marriage of Skarbek, 100 Wash.App. 444, 447, 997 P.2d 447 (2000). "Once established, separate property retains its separate character unless changed by deed, agreement of the parties, operation of law, or some other direct and positive evidence to the contrary." Id.; see also RCW 26.16.010. And, "the burden is on the spouse asserting that separate property has transferred to the community to prove the transfer by clear and convincing evidence, usually a writing evidencing mutual intent." Skarbek, 100 Wash.App. at *628 448, 997 P.2d 447. We review the court's findings of fact for substantial evidence and the conclusions of law de novo. In re Marriage of Dodd, 120 Wash.App. 638, 643, 86 P.3d 801 (2004).
¶ 12 Ms. Zier first contends the status agreement violated the restrictive stockholders' agreement signed by the Ziers. In construing a contract, we give great weight to the parties' intent. In re Estates of Wahl, 99 Wash.2d 828, 830-31, 664 P.2d 1250 (1983). We read contracts as a whole and will not read an ambiguity into a contract that is otherwise unambiguous. Berg v. Hudesman, 115 Wash.2d 657, 669, 801 P.2d 222 (1990).
¶ 13 Stock purchase restrictions "are often employed to enable shareholders in close corporations to control the identity of their associates and maintain harmonious business relationships." Rogers Walla Walla, Inc. v. Ballard, 16 Wash.App. 81, 91, 553 P.2d 1372 (1976). A transfer restriction, which is unambiguous, clearly sets forth its terms, and is executed by capable parties is enforceable. Rao v. Rao, 927 So.2d 356, 366-67 (La.Ct.App.2005).
¶ 14 While the Ziers' status agreement transfers Ms. Zier's individual ownership of her stock to the community, the record contains evidence showing her brother Wayne, the corporate CEO and extensive Telect shareholder, executed a similar status agreement with his wife, Terina. Further, evidence derived from Ms. Zier shows her parents, the major Telect stockholders, approved of the arrangement. Given the Williamses' family interest in tax avoidance, it is unsurprising they would support the Ziers' tax planning effort as apparently was the case for Wayne and his wife. In any event, the trial court did not err in disregarding the restrictive stockholder agreement under the circumstances. The evidence is overwhelming that the Ziers intended to regard this particular asset as community for their individual estate planning purposes.
¶ 15 Moreover, a dissolution court's mischaracterization of property is rarely a proper basis to reverse the court's property distribution. Gillespie, 89 Wash.App. at 399, 948 P.2d 1338. This is because the dispositive inquiry of the court's property distribution is that the court's decision "is just and equitable under all the circumstances." Kraft, 119 Wash.2d at 450, 832 P.2d 871; see also In re Marriage of Davison, 112 Wash. App. 251, 259, 48 P.3d 358 (2002) ("the court is required to make an equitable distribution, not an equal one."). Further, although a court may characterize one or another asset as separate versus community, all property before the court is capable of division to reach a just and equitable result.
¶ 16 Here, the court divided the community shares in a manner that each party received an equal share of the Telect stock. The court expressed its intent in its conclusions of law to divide the community estate equally. Given all, the court's treatment of the Telect stock does not warrant reversal of the court's property distribution. The court made a fair and equitable disposition based upon consideration of all the circumstances of the marriage.
¶ 17 Next, Ms. Zier contends the stock gifts failed for lack of delivery. The elements of a completed gift are (1) an intention of the donor to give; (2) a subject matter capable of delivery; (3) a delivery; and (4) acceptance by the donee. Sinclair v. Fleischman, 54 Wash.App. 204, 207, 773 P.2d 101 (1989).
¶ 18 Currently, only such delivery is required as the nature of the thing given and the circumstances under which it is given will permit, and so it is generally held the delivery may be manual, constructive or symbolic. McCarton v. Estate of Watson, 39 Wash.App. 358, 364-65, 693 P.2d 192 (1984). No absolute rule exists as to what conduct will constitute a sufficient delivery to support a gift in all cases. Whether what was done was sufficient to constitute a delivery depends on the nature of the property and the attendant circumstances. Sinclair, 54 Wash. App. at 207, 773 P.2d 101.
¶ 19 Here, the Ziers entered into a status agreement regarding stock they each owned separately. After the status agreement, additional Telect stock was delivered *629 in both names. In Henderson v. Tagg, 68 Wash.2d 188, 412 P.2d 112 (1966), our Supreme Court held the donor of shares of stock is not required to hand deliver stock certificates to his intended donee in order to satisfy the legal requirements for a completed gift as long as the corporation is aware of the status agreement. Again, the evidence shows Wayne Williams, Telect's CEO, and Ms. Zier's parents were aware of the agreement and apparently supported it until Ms. Zier filed this marriage dissolution. Accordingly, we hold the delivery requirement of the gift was satisfied.
¶ 20 Lastly, Ms. Zier contends the status agreement was void because she did not receive independent counsel, analogizing a postnuptial agreement with a prenuptial agreement. The validity of prenuptial agreements in this state is based on the circumstances surrounding the execution of the agreement. In re Marriage of Matson, 107 Wash.2d 479, 484, 730 P.2d 668 (1986). "The bargaining positions of the parties, sophistication of the parties, presence of independent advice, understanding of the legal consequences and rights, and timing of the agreement juxtaposed with the wedding date are some of the factors involved in the circumstances surrounding the document signing." Id.
¶ 21 We do not consider the execution of an item-specific, post marital community property agreement as analogous with a prenuptial agreement. The arguments asserting comparability are strained.
¶ 22 In re Estate of Catto, 88 Wash.App. 522, 528, 944 P.2d 1052 (1997) illustrates that the analogy is flawed, or in any event unhelpful to Ms. Zier. There, estate heirs appealed the trial court's decision awarding most of the property to the surviving spouse under a community property agreement. The heirs asserted that the agreement was void because the decedent was not represented by independent counsel at the time of its execution. The heirs argued that because the decedent was elderly and suffering from health problems when the agreement was executed, the court should impose the requirement for independent counsel. The court, however, refused to require independent counsel without evidence that the decedent failed to understand the agreement or was coerced into signing it.
¶ 23 Here, Ms. Zier alleges she did not understand the ramifications of the status agreement. However, Mr. Simpson testified he explained in detail the effect of the agreement on the parties' property during their lifetime. He specifically warned the Ziers if problems existed in their marriage they should not sign it. The trial court specifically found Ms. Zier not credible on this point. Credibility determinations are for the trier of fact. Morse v. Antonellis, 149 Wash.2d 572, 574, 70 P.3d 125 (2003). Ms. Zier's assertion she would not have chosen to enter into the agreement had she been given an opportunity to talk to a different lawyer is unpersuasive. Moreover, having signed the stockholder agreement before the status agreement, Ms. Zier had a nearly impossible burden of showing fraud or mistake.

Attorney Fees
¶ 24 Mr. Zier requests attorney fees on appeal under RAP 18.9(a), arguing Ms. Zier's appeal is frivolous. An appeal is frivolous "if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal." Streater v. White, 26 Wash.App. 430, 435, 613 P.2d 187 (1980). In view of our analysis, we cannot say the issues were not debatable. Therefore, attorney fees are denied.
¶ 25Affirmed.
I CONCUR: KULIK, J.
SWEENEY, C.J. (dissenting).
¶ 26 We review de novo a trial court's characterization of property to be divided in dissolution proceedings. In re Marriage of Marzetta, 129 Wash.App. 607, 616, 120 P.3d 75 (2005), review denied, 157 Wash.2d 1009, 139 P.3d 349 (2006). Here, we should review two agreements and we should answer two essential questions. First, did Donna and Kelly Zier, by executing the status agreement, intend to transfer their individual shares to the community? The intent of the *630 parties to an agreement is a question of fact. See, e.g., In re Marriage of Boisen, 87 Wash. App. 912, 920-21, 943 P.2d 682 (1997) (separation agreement). Here, there is no serious dispute that the parties did intend a transfer  what was separate property was now owned by the community.
¶ 27 Second, does the plain language of Telect, Inc.'s stockholders' agreement, signed by Donna and Kelly as a condition of receiving their individual stock, preclude any legally effective transfer without an affirmative vote of 66-2/3 percent of Telect shareholders? Again, the language restricting stock transfers is plain. And we should not disregard it. Wagner v. Wagner, 95 Wash.2d 94, 101, 621 P.2d 1279 (1980). Nor should we rewrite the agreement under the guise of construing them. Id.
¶ 28 By the plain language of the agreement, no stock transfer can occur without an affirmative two-thirds vote of the shareholders. This means that neither Donna nor the court can transfer Donna's separate ownership of her stocks to the community based on tacit approval. The court made no finding of shareholder approval for transferring Donna's ownership interest to the marital community.
¶ 29 Therefore, the court erred as a matter of law in concluding (a) that the status agreement constituted an effective transfer and (b) that the court had the power to effect a stock transfer that the parties themselves could not effect. The result was that the court mischaracterized separate property as community property.
¶ 30 Now, until a judge correctly characterizes the property in a dissolution action as community or separate, I do not know how she can make any "fair and equitable" distribution. Where the classification of stocks is crucial to the distribution, "we must remand so the trial court may exercise its discretion with the correct character of the property in mind." In re Marriage of Shui, 132 Wash. App. 568, 587, 125 P.3d 180 (2005).
¶ 31 Here, the mischaracterized stock was this marital community's major asset. I do not know how we can pass upon the court's exercise of discretion, when that discretion is based on an error as to who owns what. Only when the property has been correctly categorized as separate or community may the court exercise its wide discretion to divide the property as seems to the court to be fair and equitable. In re Marriage of Brewer, 137 Wash.2d 756, 766, 976 P.2d 102 (1999).
¶ 32 I disagree with the statement that "a dissolution court's mischaracterization of property is rarely a proper basis to reverse a court's property distribution." Majority, at 628. The case cited for that proposition, In re Marriage of Gillespie, does not say that. In re Marriage of Gillespie, 89 Wash.App. 390, 399, 948 P.2d 1338 (1997). And I can find no case that does say that.
¶ 33 There is some discussion in In re Marriage of Shannon to the effect that we will affirm notwithstanding a mischaracterization of property, if we can divine that the trial judge would have divided the property in the same way despite the error. In re Marriage of Shannon, 55 Wash.App. 137, 141-43, 777 P.2d 8 (1989). The authority for that statement is, for me, questionable. It is certainly at odds with the pronouncements by our Supreme Court. Brewer, 137 Wash.2d at 766, 976 P.2d 102. But, even if it were correct, we have no indication on this record that, if Donna Zier's separate property had not been erroneously characterized as community property, the judge would have divided the correctly identified separate stocks in the same way. The judge may have. But she may not. I do not know.
¶ 34 I, therefore, respectfully dissent. I would reverse and remand to give the trial judge the opportunity to reconsider the distribution of this property using the correct characterization of the stock in light of the stockholders' agreement.