FILED
COURT OF APPEALS
DIVISION II

2013 MAR 12 AM 8: 40

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In Re Marriage of: | No. 42351-1-II |
| CARY R. CARUGHI, | |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| JOHN G. CARUGHI, | |
| Respondent. | |

BJORGEN, J. — Cary Carughi appeals from the order of dissolution of her marriage to John Carughi. Cary[1] challenges (1) the trial court's findings of fact as to the valuation of the family home, (2) the trial court's findings of fact and conclusions of law that an antique gun collection was John's separate property, (3) the trial court's findings and conclusions that she committed waste of community and separate property, and (4) the trial court's findings and conclusions that John may be entitled to a future attorney fee award against her. John and Cary each request attorney fees under RCW 26.09.140. John also requests attorney fees under RAP 18.9(a) for Cary's filing of a frivolous appeal. We affirm the trial court and award John attorney fees.

---

[1] We use the parties' first names for clarity and intend no disrespect.

## FACTS

John and Cary were married in 1992. John's father, John Sr., later died, and his will was admitted to probate in 1998. Among his estate assets was a large collection of antique guns. Although the will had originally devised the "entire" collection to John, the word "entire" had been stricken from the will under unexplained circumstances. Report of Proceedings at 132. In addition, the probate inventory attached to the will listed only 19 guns.

Expecting to receive a collection of well over 200 guns, John and Cary traveled to Texas to pick up the guns from the home of John's sister Cheryl. After arguing with Cheryl and her husband over distribution of the guns, John and Cary took home with them all but 20 to 25. Apparently, Cheryl did not contest this action. The guns John took home with him were worth between $262,000 and $448,000.

In 2004, John began working as an electrician in the Middle East on a contract basis, returning to the United States during periods between contracts. When John was working overseas, he deposited money into bank accounts, to which Cary had access, in sufficient amounts to satisfy Cary's household expenses and the mortgage payments on the family home.

Despite the funds that John deposited, Cary made only sporadic payments on the mortgage for the family home while John was out of the country. Cary also made many large cash withdrawals from the couple's bank accounts, including withdrawals from ATMs (automatic teller machines) near casinos. She used at least part of these withdrawals for gambling. Additionally, Cary accrued bank overdraft fees of more than $4,300 between December 2007 and October 2009. Cary and her son Christopher also pawned a number of guns from John Sr.'s collection without John's knowledge, receiving over $100,000.

When John would come home during this time, Cary would stop the mail to prevent him from seeing any bills or learning that the mortgage was in default. In September 2009, John returned to the United States and found out that the family home was in foreclosure. Cary could not explain why the home was in foreclosure, and the parties separated with John telling Cary not to return home. John paid most of his remaining savings to get the home out of foreclosure.

John filed to dissolve the marriage in December 2009. He also filed a replevin action in federal court seeking return of the guns that Cary had pawned. The federal court stayed the action pending the state trial court's decision in the dissolution action whether the guns were community property and whether Cary had authority to dispose of them.

The trial court issued findings of fact and conclusions of law and a decree of dissolution following a bench trial. The trial court ruled that the guns from John Sr.'s collection were John's separate property and awarded him the entire collection. The trial court also ruled that Cary's gambling and financial mismanagement constituted waste of both community assets and John's separate assets, but found that the amount of waste could not be determined until the federal replevin action had been resolved. The trial court awarded John the family home and ruled that because of Cary's waste, John would not be required to immediately pay any marital lien to satisfy Cary's equity in the home. Instead, it allowed John to satisfy Cary's equity if John chose to sell the home.

The trial court additionally found that Cary's actions prevented the case from settling, increased the parties' attorney fees, and led to John incurring attorney fees in the federal case. For these reasons, the trial court ruled that John might be entitled to an attorney fee award against Cary after the federal case was resolved. Cary appeals.

ANALYSIS

I. STANDARD OF REVIEW

We review the trial court's findings of fact in a dissolution action for substantial evidence. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Substantial evidence is a sufficient quantity of evidence to persuade a fair-minded, rational person that the finding is true. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). This court defers to the fact finder on witness credibility and the persuasiveness of the evidence. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). Unchallenged findings are verities on appeal. *Akon*, 160 Wn. App. at 57.

Further, we review whether the findings of fact support the trial court's conclusions of law. *Rockwell*, 141 Wn. App. at 242. We review questions of law de novo. *In re Marriage of Herridge*, 169 Wn. App. 290, 297, 279 P.3d 956 (2012).

More specifically, we review a trial court's property distribution in a dissolution action for manifest abuse of discretion. *In re Marriage of Zier*, 136 Wn. App. 40, 45, 147 P.3d 624 (2006). A trial court abuses its discretion when it adopts a position no reasonable person would take, relies on unsupported facts, or relies on an erroneous view of the law. *Kelley v. Centennial Contractors Enters., Inc.*, 169 Wn.2d 381, 386, 236 P.3d 197 (2010).

II. VALUE OF THE FAMILY HOME

Cary first argues that substantial evidence does not support the trial court's finding of fact 2.21.2, in which the trial court valued the family home at $238,000. Cary fails to support this argument.

John had submitted a comparative market analysis (CMA) of the home that found its value to be $238,000, and he testified that based on the CMA, he believed $238,000 was a fair value for the home. In finding of fact 2.21.2, the trial court concluded that the CMA should not have been admitted or considered, but nevertheless valued the home at $238,000, based on John's undisputed testimony.

Cary argues that there is no support in the record for setting the value of the home at this amount. However, *Worthington v. Worthington*, 73 Wn.2d 759, 763, 440 P.2d 478 (1968), held that "[a]n owner may testify as to the value of his property and the weight to be given to it is left to the trier of fact." John testified that $238,000 was a fair value for the home. No argument was made on appeal that this evidence was inadmissible because it was based on the CMA. Thus, John's testimony constitutes substantial evidence supporting the trial court's setting the home's value at $238,000. Further, Cary fails to support her bald assertion about the lack of evidence in the record. Failure to accompany an assignment of error with argument precludes appellate consideration. *Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003). For each of these reasons, the finding setting the value of the home must be upheld.

### III. THE GUN COLLECTION WAS JOHN'S SEPARATE PROPERTY

Cary argues that findings 2.21.5, .6, .7, .9, .10, and .24, relating to the characterization of

the gun collection as John's separate property, are unsupported by substantial evidence.[2,3] She further argues that the trial court erred by concluding that the guns were John's separate property. These arguments fail.

Property acquired during marriage is presumed to be community property. *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). In addition, the law favors characterization of property as community property unless there is no question of its separate character. *In re Marriage of Mueller*, 140 Wn. App. 498, 504, 167 P.3d 568 (2007). Thus, the presumption must be overcome by clear and convincing evidence. *In re Estate of Borghi*, 167 Wn.2d 480, 484 n.4, 219 P.3d 932 (2009).

Separate property includes property acquired by "gift, bequest, devise, descent, or inheritance." RCW 26.16.010. The community property presumption is rebuttable by establishing that property acquired during the marriage fits one of these separate property categories. *Short*, 125 Wn.2d at 870-71. Appellate courts review the trial court's separate property findings of fact for substantial evidence that is "'highly probable.'" *In re Marriage of Schweitzer*, 132 Wn.2d 318, 329-30, 937 P.2d 1062 (1997) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)).

---

[2] Cary also assigns error to finding 2.21.8, which determined the value of the gun collection, but provides no argument as to this finding in her briefing. Failure to accompany an assignment of error with argument precludes appellate consideration. *Escude*, 117 Wn. App. at 190 n.4. This court accordingly does not consider Cary's assignment of error on this point.

[3] Cary additionally argues that finding 2.21.38 relates to the trial court's characterization of the gun collection and is unsupported by substantial evidence. This finding, however, relates to Cary's liability for attorney fees, which we address below in section V of this analysis.

A.  Substantial Evidence Supports Findings that Guns Are Separate Property

Cary's challenges to the characterization of the gun collection as separate property cover two separate issues: (1) whether the guns were part of John's inheritance and (2) whether Cary lacked authority to control the guns. Again, both of her arguments fail.

1. Findings Regarding Whether Guns Were Part of Inheritance

Cary challenges findings of fact 2.21.5, .6, and .7, the trial court's findings that the guns were part of John's inheritance. In finding 2.21.5, the trial court found that the gun collection came from John Sr.'s estate and no other source. In finding 2.21.6, the trial court found that the inventory attached to John Sr.'s will showing only 19 guns was erroneous, and that the other heirs to the estate appeared to have signed off on probate after John obtained the gun collection. In finding 2.21.7, the trial court found that John and Cary constructed a custom trailer to bring the guns back to Washington, making it improbable that they had removed the guns without Cheryl's knowledge. The court further found that John's sister Cheryl never filed any action to have the guns returned.

Cary argues that the above findings are unsupported by substantial evidence, in part because (1) John purchased eight guns during the marriage and (2) John auctioned some of his guns to make a down payment on the marital home. While the record supports Cary's assertions, they do not impugn the challenged findings of fact. It was undisputed at trial that the guns purchased during the marriage were community property, and the trial court divided them as such. Further, Cary does not explain how John's selling a small number of the guns to purchase the home shows that he did not take them under the will.

7

Cary also claims that the above findings are not supported by substantial evidence because (1) the word "entire" was stricken from the will provision leaving the gun collection to John, (2) the inventory listed only 19 guns, and (3) John took all but 20-25 guns from Cheryl's residence after a contentious argument. Br. of Appellant at 12. None of these arguments demonstrate that the above findings were unsupported by highly probable substantial evidence; at best they highlight conflicting evidence, which the trial court resolved. This court defers to the fact finder on the persuasiveness of the evidence. Thus, these findings must be upheld.

Cary further challenges the statement in finding 2.21.7 that she discussed the potential tax liability of John's inheritance with a tax attorney. In challenging this finding, Cary claims that she "briefly discussed whether an inheritance was taxable, but John and Cary had received no paperwork regarding the estate at that time." Br. of Appellant at 13. This argument supplies no basis for challenging the finding; on the contrary, it appears to support, rather than dispute, the finding at issue

In addition, a review of the record shows that the above findings were supported by highly probable substantial evidence. Although the word "entire" had been stricken from the will, its terms still granted the gun collection to John. Although the inventory included only 19 guns, it was undisputed that the collection contained over 200 guns. 1 RP at 136. There was no evidence that the guns came from any source other than John's inheritance. There was no dispute about John's taking the bulk of the guns, but a dispute over only approximately five particular guns that Cheryl and her husband wanted to keep. Under the standards above, we uphold these findings.

2. Findings Regarding Cary's Authority To Control Gun Collection

Cary further contests findings 2.21.9, .10, and .24 regarding her authority to control the guns. In finding 2.21.9, the trial court found that John did not delegate control or authority over the guns to Cary; and in finding 2.21.10, it found that Cary acted without authority when she pawned guns from John Sr.'s collection. In finding 2.21.24, the trial court simply restated both of these findings.

Cary challenges these findings, asserting, "There is no evidence in the record that John restricted Cary's ability to manage the couple's finances and affairs while he was out of the country." Br. of Appellant at 13. Cary is correct that John did not restrict her authority to manage the couple's finances and affairs. John, though, testified that he never gave anyone else permission to dispose of the guns acquired from his father's estate. He testified explicitly that he did not give Cary authority to pawn any guns from the collection.

To be sure, if the guns were community assets, then Cary would not have *needed* John's authority to control them. *Mueller*, 140 Wn. App. at 501-02 (each spouse may generally control community property as his or her separate property). As separate property, though, Cary would have the authority to control the guns only if John had granted her that authority. There is absolutely no evidence that he did so. Substantial evidence supports the trial court's findings on this point.

B.      Characterization of Guns as Separate Property Not Erroneous

Cary further argues that the trial court erred by concluding that the gun collection was John's separate property. Her only argument on this point, though, is to essentially restate her challenge to the findings of fact on this issue. Because Cary's challenge to the findings fails, her

argument here similarly fails to demonstrate that the trial court erred in concluding that the guns were John's separate property.

More generally, the ultimate standard governing a trial court's property distribution is whether it is "'just and equitable under all the circumstances.'" *Zier*, 136 Wn. App. at 46 (quoting *In re Marriage of Kraft*, 119 Wn.2d 438, 450, 832 P.2d 871 (1992)). Cary fails to argue, or to show, that the trial court's property distribution was not just and equitable. Under *Escude*, 117 Wn. App. at 190 n.4, we do not address issues that have not been argued.

Highly probable substantial evidence supports the finding that John received the guns through his father's will. John overcame the presumption of community property, and the trial court did not err by concluding that the guns were his separate property.

### IV. CARY'S WASTE OF COMMUNITY AND SEPARATE ASSETS

Cary argues that findings 2.21.3, .4, .16, .19, .20, .21, .23, and paragraph 3.12 of the dissolution decree, all regarding waste of community and separate assets, are unsupported by substantial evidence.[4] She additionally argues that the trial court erred by concluding that she committed waste.[5] We disagree.

A.    Cary Fails To Provide Argument Regarding Findings of Fact on Waste

Although Cary challenges findings 2.21.3, .4, .16, .19, .20, .21, .23, and paragraph 3.12 of the dissolution decree for lack of substantial evidence, only finding 2.21.16 contains findings of

_____

[4] Cary also challenges finding 2.21.38, claiming that it relates to her committing waste. Again, this finding relates to Cary's liability for attorney fees and is addressed below at section V.

[5] Cary also assigns error to findings 2.21.15 and .17, but she makes no mention of them in the argument section of her brief. Failure to provide argument as to an assignment of error precludes appellate consideration. *Escude*, 117 Wn. App. at 190 n.4. We accordingly do not address Cary's challenges to these findings.

10

fact related to waste. The rest of the challenged findings simply restate the legal conclusion that Cary committed waste, without factual findings on the issue. We treat findings of fact as conclusions of law when appropriate, as here. *Grundy v. Brack Family Trust*, 151 Wn. App. 557, 568 n.7, 213 P.3d 619 (2009).

In finding 2.21.16, the trial court found that Cary did not have a true economic need to pawn the guns, and that she withdrew large sums of money from banks and from ATM machines near casinos. Cary provides no argument challenging the evidence supporting these factual findings. Instead, she argues that the parties had no debt other than the mortgage at the time of separation, and that she paid household expenses with the money John gave her and the money she received from pawning guns.

Neither of these arguments question whether the trial court's findings on this point are supported by substantial evidence. Thus, neither argument provides any basis for overturning these findings.

B.     The Conclusion as to Waste is Not Erroneous

A trial court "has discretion to consider whose 'negatively productive conduct' depleted the couple's assets and to apportion a higher debt load or fewer assets to the wasteful marital partner." *In re Marriage of Williams*, 84 Wn. App. 263, 270, 927 P.2d 679 (1996) (quoting *In re Marriage of Clark*, 13 Wn. App. 805, 809, 538 P.2d 145 (1975)). While there is little precedent determining exactly what constitutes waste in Washington, the Court of Appeals has recognized that the failure to pay taxes constitutes marital waste. *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991). The issue here is whether Cary's failure to pay community debts, despite ample resources to do so, constituted waste.

Cary provides no argument that the trial court's findings on this point are unsupported by substantial evidence. In finding 2.21.15, the trial court found that Cary had serious financial management issues and allowed the marital home to go into foreclosure twice, despite receiving $4,000 to $6,000 per month from John, which would have covered the mortgage payment on the family home. The trial court found that Cary accrued approximately $4,300 in bank overdraft charges, and that she stopped the mail when John was home so that he would not learn of the couple's financial situation.

In finding 2.21.16, the trial court found that Cary had no economic necessity to pawn John's guns and that she withdrew large amounts of money from banks and from ATMs near casinos. In finding 2.21.17, the trial court determined that the circumstances surrounding the bank withdrawals indicated that Cary had money management problems with gambling. In findings 2.21.19 and .20, the trial court found that Cary's spending was to the clear detriment of the marital community, and that she spent John's separate property funds in addition to community property.

The trial court's unchallenged findings, which we take as verities on appeal, show that Cary's actions depleted community assets, as well as John's separate assets. Cary allowed the mortgage to go into default and accrued substantial overdraft fees despite receiving adequate funds from John *and* pawning John's guns, due at least in part to her gambling problems. If the failure to pay taxes constitutes waste as held in *Steadman*, 63 Wn. App. at 528, these actions surely do also.

Cary argues to the contrary that (1) she paid all of the couple's *other* bills, and that (2) John also was not a good money manager. These arguments, though, do nothing to question the findings and conclusions that *she* committed waste.

Under the case law, Cary's actions constituted marital waste. The trial court did not abuse its discretion in considering this waste when deciding how to distribute the couple's property.

## V. ATTORNEY FEES AT TRIAL

Cary argues that finding 2.21.38 and paragraph 3.12 of the dissolution decree are unsupported by substantial evidence and do not support any award of attorney fees below against her. We decline to reach these arguments because the trial court made no attorney fee award against Cary, making any decision by this court an improper advisory opinion.

In finding 2.21.38, the trial court found that "but for the wife's actions, the case most likely would have settled and that her actions increased fees and costs for both parties." Clerk's Papers (CP) at 6. In paragraph 3.12 of the dissolution decree, the trial court stated:

> The court finds that due to the wife's marital waste, the husband and the wife have increased their attorney fees and the husband has incurred additional attorney fees and costs in the federal case. The court retains jurisdiction in this matter and the attorneys shall provide a cost bill through the date of the court's findings on May 12, 2011. When the federal matter is concluded, the court *may* be awarding *some* of the husband's attorney fees and costs to the wife. The court *may* not be awarding fees dollar for dollar, but the wife *may* be expected to take on some of the costs because the court finds that but for her actions, these costs would not have been incurred.

CP at 31 (emphasis added).

Interlineations on the document, substituting the word "may" for "will," show that the trial court rejected proposed language that it was awarding attorney fees against Cary

13

at that time. Thus, the trial court awarded no attorney fees against Cary. Instead, the court noted simply that a future award may be justified.

Advisory opinions are disfavored in Washington courts. *State v. Norby*, 122 Wn.2d 258, 269, 858 P.2d 210 (1993). More specifically, the Court of Appeals has, in other family law cases, declined to issue advisory opinions. *See In re Marriage of Eklund*, 143 Wn. App. 207, 211, 177 P.3d 189 (2008) (declining to issue advisory opinion regarding correctness of trial court's advisory oral ruling regarding parenting plan); *In re Marriage of Davisson*, 131 Wn. App. 220, 226-27, 126 P.3d 76 (2006) (declining to issue advisory opinion regarding legal question that might arise in future parenting plan disputes, but was not germane to case at bar). We follow these cases and decline to issue an advisory opinion deciding the propriety of an attorney fee award that is, at best, only hypothetical at this point in the litigation.

## VI. ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal under RCW 26.09.140. That statute authorizes our court to award attorney fees to a party in a dissolution action "after considering the financial resources of both parties." RCW 26.09.140. RAP 18.1(c) states:

> In any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses, each party must serve upon the other and file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration on the merits.

Neither party submitted the affidavits required under RAP 18.1(c). Therefore, both requests for attorney fees on appeal under RCW 26.09.140 must be denied. *In re Marriage of Smith*, 158 Wn. App. 248, 263, 241 P.3d 449 (2010).

John also requests attorney fees under RAP 18.9(a) as sanctions for Cary's filing a frivolous appeal. "An appeal is frivolous 'if there are no debatable issues upon which reasonable

minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.'" *Zier*, 136 Wn. App. at 49 (quoting *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980)). Cary's appeal is plainly frivolous under these standards on the issues of valuation of the house and waste of community and separate assets. It is not debatable whether substantial evidence supports the challenged findings on those issues.

The issue whether the gun collection is John's separate property requires a more detailed look. As noted above, we review the findings for substantial evidence and defer to the fact finder on the credibility of witnesses and the persuasiveness of the evidence. As also shown above, the trial court's characterization of the gun collection as John's separate property is supported by substantial evidence.

Cary argues that the striking of the term "entire" from the will and the listing of only 19 guns on the probate inventory, together with the presumption that property acquired during marriage is community, shows that it was erroneous to find the guns to be separate property. Striking "entire," however, does not change the meaning of the will. On its face, it still granted the gun collection to John, without limitation. Although listing only 19 of the over 200 guns in the collection suggests some uncertainty in the status of the remaining guns, the trial court expressly considered and discussed these issues in its findings and conclusions that the gun collection was John's separate property, well supported by the evidence. As shown above, for us to reverse on the basis of the probate inventory would ignore both the substantial evidence standard and the rule that we do not weigh the evidence again. Similarly, Cary's assertions that the couples quarreled over the guns and that John took more guns than his sister was willing to

yield do not call into question the presence of substantial evidence. Similarly, reversing on this basis would intrude into the trial court's exclusive responsibility to weigh the evidence.

Simply making weak or losing arguments does not warrant an attorney fee award. At times, an advocate must explore the limits of plausibility in arguing a case. Here, though, those limits were crossed, and we award attorney fees on appeal to John under RAP 18.9(a) in an amount to be determined by our commissioner.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Bjorgen, J.

We concur:

_____
Hunt, J.

_____
Worswick, C.J.