# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of: | No. 49066-8-II |
| | consolidated with |
| PAMELA R. FLAGELLA, | No. 49763-8-II |
| Respondent, | |
| And | UNPUBLISHED OPINION |
| ROBERT N. FLAGELLA, | |
| Appellant. | |

MELNICK, J. — Robert N. Flagella appeals the trial court's distribution of property and award of maintenance to his former wife, Pamela R. Flagella. He asserts that the trial court erred when it mischaracterized property and when it failed to modify his maintenance because of his subsequent job loss. We affirm.

## FACTS

The parties married in September 1995 and separated in June 2014. At the time of marriage Pamela[1] had two children. Robert did not have any children and no children were born during the marriage. At the time of separation, Robert was 62 years old and Pamela was 57 years old.

---

[1] We use the parties' first names for clarity and intend no disrespect.

## I.     OCCUPATIONS

At the time the parties married, Robert worked as a chemical engineer for Union Carbide Corporation.  He worked for Union Carbide for 20 years prior to his marriage to Pamela.  Robert continued to work for Union Carbide for two more years after the parties married.  Union Carbide subsequently merged with Dow Chemical and it laid off Robert in 1997.

Robert then worked for two years at Aluminum Oxide Laboratories, and then a year at Honeywell Electronic Materials.  From 2000 to 2013, Robert worked for CH2M Hill/I&AT.  At the time of trial, Robert earned $170,000 per year as a senior project manager for Glumac.

Pamela earned an associate's degree in 1978 and began working as an administrative assistance at Arthur Anderson, an accounting firm.  Pamela left her job in 1995, soon after the parties married, to stay home with her children.

Pamela worked for a short period of time as an administrative assistant when Union Carbide laid off Robert, but did not return full time to the workforce until 2002.  She then worked for eight years with a family-owned business until the company was bought out in 2010.  At that time, Pamela and Robert agreed she would stop working.  After the parties separated, Pamela enrolled at a community college to earn a Microsoft certificate to allow her to reenter the workforce as a clerical administrative assistant.

## II.     DISSOLUTION

In August 2014, Pamela petitioned for legal separation.  The court set the case for trial and Pamela sought discovery from Robert regarding the balances and values of the parties' retirement accounts, inheritances, and business ventures.  Robert resisted the discovery and provided deficient responses to her request.  Pamela filed a motion to compel and sought sanctions.  In March 2016, the trial court granted Pamela's motion to compel and ordered sanctions barring Robert "at trial

from putting forth either new evidence not previously provided or evidence that is inconsistent with the discovery provided from March 11, 2016 and prior." Clerk's Papers (CP) at 521.

III.    TRIAL

During the parties' March 2016 dissolution trial, Robert and Pamela disputed the character and distribution of the following assets relevant to this appeal:

A.    Robert's Retirement Funds

i.    Dow 401(k) Fund

While working for Union Carbide, Robert contributed to a 401(k) retirement fund. He continued to contribute to the account until he left the company. At the time of trial, the value of the account was $356,877.

Robert was unable to provide statements regarding the account history because documents were allegedly unavailable because of the Union Carbide-Dow Chemical merger. Robert asked the trial court to divide the 401(k) fund using a formula based on the premarital and postmarital years he paid into the account while working at Union Carbide. Under Robert's formula, the community portion of the 401(k) fund would be $27,000, and his separate portion would be $329,877.

Pam countered that the parties contributed to the 401(k) fund during a portion of the marriage and Robert wrote three checks to Union Carbide during the marriage that she did not "know what that was for." 1 Report of Proceedings (RP) (Apr. 28, 2016) at 68. Robert alleged these checks were for stock purchases related to a stock account, not the 401(k) fund. Robert alleged the parties later liquidated most of the Dow stock to purchase the marital home.

The trial court entered findings of fact and conclusions of law regarding its characterization of the 401(k) fund. The trial court found that Robert "provided no statements showing the value

3

of the property before the marriage on 9/23/1995, during the marriage or at date of separation on 8/13/2014." CP at 597. The trial court then concluded that Robert "has failed to overcome the presumption that the 401(K) is community property and it will be characterized as such." CP at 597.

The trial court valued the 401(k) fund at $356,877. The trial court awarded $196,803 of the 401(k) fund to Robert. And the trial court awarded $160,074 to Pamela. During its oral ruling, the trial court stated that the $160,074 was to "equalize[e] a 50/50 distribution of property to the parties." 2 RP (Apr. 28, 2016) at 265.

        ii.     American Century IRAs

Prior to marriage, Robert had two American Century IRA accounts: a select IRA opened in 1986 and a growth IRA opened in 1987. At the time of marriage, the value of the select IRA was $6,337.26 and the value of the growth IRA was $6,135.98. During the marriage, Robert continued to contribute to both IRAs from the parties' joint accounts. At the time of trial, the select IRA was valued at $25,373.06, and the growth IRA at $26,345.25. The trial court characterized both IRAs as community property and awarded them to Pamela.

        B.     Pamela's Retirement Funds

Pamela had a 401(k) retirement fund and a pension from Arthur Anderson. The value of the 401(k) fund was $151,764.86. In February 2019, Pamela will be 62 years old and will be eligible for a monthly annuity of $1,070.69 from her pension. The parties agreed that Pamela's pension should be her separate property. The trial court awarded Pamela her 401(k) fund and the pension as her separate property.

C.      Robert's Inheritance

During trial, Robert claimed he inherited shares from a GE Mutual Fund when his mother passed away in 2001.  Robert claimed he used $99,000 from the GE Mutual Fund towards the down payment on the family home that was purchased in 2010.  Robert failed to provide documentation or accounting of the GE Mutual Fund shares between the date he acquired them and the date the marital home was purchased.  When testifying at trial to the source of the GE Mutual Fund, Pamela's counsel objected under the pretrial discovery ruling that the inheritance was not disclosed before.  The trial court ultimately characterized the GE Mutual Fund, and all of the proceeds from the sale of the home, as community property.  The trial court awarded the remaining $4,149.49 in the GE Mutual Fund account to Robert.

D.      Robert's Business Venture

In 2014 just prior to separation, Pamela discovered that Robert had invested approximately $85,000 in a gem-polishing business venture.  Although Pamela asked Robert to stop investing in the business, he continued to do so even after the parties separated in June 2014.  In its oral ruling, the trial court found:

> [U]nder the gem-polishing Crystalent entry there, this $85,000 represents moneys that Mr. Flagella gave to Amy Judson beginning in the last quarter of 2013 until discovered by Mrs. Flagella in August of 2014, just prior to their separation.
>      The money was given to Ms. Judson in $5,000-a-month increments for the development and marketing of a new business.  Money was also either given to or credit card expenses were incurred for Ms. Judson and her daughter.  All of this transpired without the knowledge or consent of Ms. Flagella and, further, Mr. Flagella failed to produce any documentation to support his reasons for the expenditure of the party's community funds.

2 RP (Apr. 28, 2016) at 264. The trial court concluded that because this investment transpired without Pamela's knowledge or consent and because Robert failed to produce any documentation to support his reasons for the expenditure, the $85,000 would be deducted from Robert's share.

E.      Summary of Trial Court's Property Distribution

The trial court entered findings of fact and conclusions of law regarding its property characterization. Overall, the trial court awarded each party half of the assets (minus debts) with Robert receiving $546,803.23 and Pamela receiving $546,804.15. Once the family home was sold, each party would receive half of its proceeds. The home's net value was $594,495.98.

III.    MAINTENANCE

Pamela initially received $5,000 per month in maintenance under temporary orders entered on October 8, 2014. The trial court awarded monthly maintenance of $6,000 to Pamela for three and a half years, commencing on May 1, 2016, and ending on November 1, 2019. The trial court found this term of maintenance appropriate after considering all of the factors in RCW 26.09.090, including the length of the marriage and Robert's ability to continue to earn in excess of $170,000 a year, compared to Pamela's approximately $29,000 earning capacity. The maintenance award leaves Pamela netting approximately half of Robert's net income per month.

IV.     MOTION TO MODIFY MAINTENANCE AWARD

About six weeks after the court entered final orders, Robert filed a motion to reduce the maintenance amount based on a job loss. Glumac had laid off Robert after the parties' trial but before the trial court entered its final orders. The trial court denied Robert's motion to modify, finding Robert "did not establish a change in circumstances to justify a modification of his support obligation" and Robert "continues to have the capacity to earn the amount that he did at the time of trial and his efforts to find employment are less than what the court would expect to see." CP at 755. The trial court also found Robert "had substantial liquid funds as noted in his Financial Declaration" and his "bank statements reflect these cash amounts, including significant monthly spending." CP at 755. The trial court also found that since Robert lost his job just days after trial

6

and several weeks before final orders were entered, he was tardy in bringing the information to the trial court's attention.

Robert appealed both the trial court's property distribution and the trial court's denial of his motion for modification of the maintenance award. We subsequently consolidated the two appeals.

## ANALYSIS

I.    STANDARDS OF REVIEW

The trial court has broad discretion in awarding property, and we will reverse only for manifest abuse of discretion. *In re Marriage of Zier*, 136 Wn. App. 40, 45, 147 P.3d 624 (2006). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Kappelman v. Lutz,* 167 Wn.2d 1, 6, 217 P.3d 286 (2009). We review a trial court's characterization of property as community or separate de novo, but we review the findings of fact on which that characterization was based for substantial evidence. *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). Unchallenged findings of fact are verities on appeal. *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999).

II.    APPLICABLE LAW

All property is before the court for distribution in a marriage dissolution. *Zier,* 136 Wn. App. at 45. "The character of property, whether separate or community, is determined at the time of acquisition." *In re Marriage of Schwarz*, 192 Wn. App. 180, 189, 368 P.3d 173, 178 (2016). An asset is separate property if "acquired before marriage; acquired during marriage by gift or inheritance; acquired during marriage with the traceable proceeds of separate property; or, in the case of earnings or accumulations, acquired during permanent separation." *In re Marriage of*

*White*, 105 Wn. App. 545, 550, 20 P.3d 481 (2001) (footnotes omitted); RCW 26.16.010.  Property acquired during marriage is presumptively community property.  *Skarbek*, 100 Wn. App. at 449.  A party may rebut this presumption by offering clear and convincing evidence that the property was acquired with separate funds.  *Skarbek*, 100 Wn. App. at 449.  Commingling of separate and community funds may give rise to a presumption that all are community property.  *Schwarz*, 192 Wn. App. at 190.  "This is not commingling in the ordinary sense, however; it must be hopeless commingling."  *Schwarz*, 192 Wn. App. at 190 (footnote omitted).  "It is '[o]nly if community and separate funds are so commingled that they may not be distinguished or apportioned is the entire amount rendered community property.'"  *Schwarz*, 192 Wn. App. at 190 (quoting *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 866, 855 P.2d 1210 (1993)).  "If the sources of the deposits can be traced and identified, the separate identity of the funds is preserved."  *Skarbek*, 100 Wn. App. at 448.

III.    ADEQUACY OF FINDINGS OF FACT

Robert first argues the trial court's findings of fact on the characterization and distribution of property are insufficient to permit meaningful review.  We disagree.

A trial court must make findings of fact and conclusions of law sufficient to suggest the factual basis for its ultimate conclusions.  *In re Marriage of Lawrence*, 105 Wn. App. 683, 686, 20 P.3d 972 (2001).  Here, the trial court entered the standard form findings of fact and conclusions of law for a dissolution matter, entered separate findings of fact and conclusions of law on its maintenance award and property characterization, and provided an oral ruling to further explain the trial court's reasoning.  These combined items provide a sufficient basis for our court's review.

IV.    DOW 401(K) FUND

Robert next argues the trial court erroneously characterized the majority of the 401(k) fund as community property. [2] We disagree that the court's characterization requires reversal of the property distribution.

As previously stated, an asset is separate property if "acquired before marriage; acquired during marriage by gift or inheritance; acquired during marriage with the traceable proceeds of separate property." *White*, 105 Wn. App. at 550 (footnotes omitted).

Here, part of the 401(k) fund was acquired before marriage and part was acquired after. Commingling of separate and community funds may give rise to a presumption that all are community property. *Schwarz*, 192 Wn. App. at 190. Relying on *Schwarz*, Robert argues that it "must be hopeless commingling" and here the trial court could easy apportion the separate property and community property. 192 Wn. App. at 190.

In *Schwarz*, the wife had an investment account with D.A. Davidson established before the marriage. 192 Wn. App. at 193. There were eight contributions to the account during marriage. *Schwartz*, 192 Wn. App. at 193. The court held that, "While the eight contributors to the D.A. Davidson account required a considerable amount of effort to explain and document, they did not give rise to hopeless commingling." *Schwarz*, 192 Wn. App. at 193.

---

[2] Robert also alleges Pamela conceded the Dow 401(k) fund should be characterized as his separate property. Pamela testified that the separate property component of the Dow 401(k) fund should be given the same treatment as her Arthur Anderson 401(k), only if Robert did not contribute any funds to the account after he left Union Carbide. Pamela testified she "did not know" if he contributed to the Dow 401(k) fund during marriage. 1 RP (Apr. 28, 2017) at 70.

We agree with the court in *Schwarz* that the commingling must be hopeless to give rise to a presumption that all are community property. *Schwarz*, 192 Wn. App. at 190. Indeed, it has long been established in our state that if "separate funds have been so commingled with community funds that it is no longer possible to distinguish or apportion them, all of the commingled fund, or the property acquired thereby, is community property." *In re Estate of Witte*, 21 Wn.2d 112, 125, 150 P.2d 595 (1944).

Here, the trial court found that Robert "provided no statements showing the value of the property before the marriage . . . during the marriage or at date of separation." CP at 597. This finding is unchallenged and a verity on appeal. *Brewer*, 137 Wn.2d at 766. Robert continued to work for Union Carbide after the parties were married and continued to contribute to the 401(k) fund. Pamela testified that the parties wrote three checks to Union Carbide during the marriage and she did not "know what that was for." 1 RP (Apr. 28, 2016) at 68.

Here, unlike in *Schwarz*, there were no detailed records tracing the commingling of separate property and community property. Indeed, there are no records indicating the exact date that Robert began contributing to the 401(k) fund given that he started working for Union Carbide in 1975 and it was not until 1978 that congress originally established the Revenue Act of 1978, which included section 401(k) that gave employees a tax-free way to defer compensation for retirement. The law went into effect on January 1, 1980. 26 USC 401(k). We also do not know the amounts Robert contributed. For all of these reasons, it was not possible to distinguish or apportion the funds, rendering them hopelessly commingled and raising the presumption that the Dow 401(k) should be characterized as community property.

Moreover, as stated previously, in a dissolution action, all property, both community and separate, is before the court for distribution. *Zier,* 136 Wn. App. at 45. The trial court clearly knew this principle when it stated on the record its intent to fairly distribute the parties' property. Even if the trial court mischaracterized the 401(k) fund, we will only remand the matter if "(1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property, and (2) it is not clear that had the court properly characterized the property, it would have divided it in the same way." *In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989). This is not the case here. Thus, the trial court's characterization, even if incorrect, would not require reversal of the property distribution.

## V.    AMERICAN CENTURY IRAs

Robert next argues the trial court erred in characterizing the two American Century IRAs as community property. We disagree.

Prior to marriage, Robert established two American Century IRA accounts: a select IRA opened in 1986 and a growth IRA opened in 1987. At the time of marriage, the value of the select IRA was $6,337.26 and the value of the growth IRA was $6,135.98. At the time of trial, the select IRA was valued at $25,373.06, and the growth IRA at $26,345.25. During trial, numerous checks were admitted that were written to American Century. Robert argues these checks did not actually go to the IRAs rather they went to a separate account that was liquated. To support his argument he points to a document he drafted. He fails to provide documentation of a third American Century account that the parties contributed to during marriage.

The IRAs were initially Robert's separate property. The parties, however, contributed to the IRAs during marriage, commingling separate funds with community funds. This gives rise to a presumption that all are community property under *Schwarz*, 192 Wn. App. at 190. Accordingly, the trial court did not err in characterizing the IRAs as community property and awarding them to Pamela.

## VI.    INHERITANCE/MARITAL HOME PROCEEDS

Robert next argues the trial court erred by failing to characterize his inheritance as separate property and failing to credit him for his separate property contribution to the purchase of the parties' home. We disagree.

During trial, Robert claimed he inherited shares from a GE Mutual Fund when his mother passed away in 2001. He further claimed he used $99,000 from the GE Mutual Fund towards the down payment on the marital home that was purchased in 2010.

In its findings of fact, which are unchallenged and verities on appeal, the trial court found there was no documentation or accounting of what happened to the funds in the GE Mutual Funds between the date Robert acquired them and the date the marital home was purchased. Indeed, during trial, when Robert testified to the inheritance, Pamela's counsel objected under the pretrial discovery ruling that this inheritance was not disclosed before.

Regardless of whether the GE Mutual Funds were inherited and, were initially Robert's separate property, he clearly commingled them by contributing the funds towards the purchase of the marital home. The proceeds from the marital home would be presumed community property. *Schwarz*, 192 Wn. App. at 190. Accordingly, the trial court did not err in characterizing the GE Mutual Fund and all of the proceeds from the sale of the home as community property.

VII.    BUSINESS VENTURE

Robert next argues the trial court erred in deducting $85,000 from his share of the property distribution for his business venture.  We disagree.

When distributing property in a dissolution, a trial court may properly consider one spouse's waste or concealment of assets.  *In re Marriage of Wallace*, 111 Wn. App. 697, 708, 45 P.3d 1131 (2002).  Waste has also been characterized as gross fiscal improvidence or the squandering of marital assets.  *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991).

Just prior to separation, Robert invested community assets of approximately $85,000 in a business venture involving sapphires.  Pamela claims she did not know about the investment and when she discovered the missing funds, she asked Robert to stop investing in the business.  He continued to do so even after the parties separated in June 2014.  In its oral ruling, the trial court found:

> [U]nder the gem-polishing Crystalent entry there, this $85,000 represents moneys that Mr. Flagella gave to Amy Judson beginning in the last quarter of 2013 until discovered by Mrs. Flagella in August of 2014, just prior to their separation.
> The money was given to Ms. Judson in $5,000-a-month increments for the development and marketing of a new business.  Money was also either given to or credit card expenses were incurred for Ms. Judson and her daughter.  All of this transpired without the knowledge or consent of Ms. Flagella and, further, Mr. Flagella failed to produce any documentation to support his reasons for the expenditure of the party's community funds.

2 RP (Apr. 28, 2016) at 264.

The trial court concluded that because the $85,000 investment transpired without Pamela's knowledge or consent and because Robert failed to produce any documentation to support his reasons for the expenditure, the $85,000 would be deducted from Robert's share.

13

Because Robert failed to provide documentation showing Pamela was aware of the business investment or documentation showing the investment was not gross fiscal improvidence, and because we leave credibility determinations to the trier of fact, the trial court did not err in deducting $85,000 from Robert's share of the property distribution. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

VIII.    MOTION TO MODIFY MAINTENANCE AWARD

Robert next alleges the trial court erred when it denied his motion for modification of the maintenance award. We disagree.

We review a trial court's modification of maintenance for abuse of discretion. *In re Marriage of Drlik*, 121 Wn. App. 269, 274, 87 P.3d 1192 (2004). A court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. *In re Marriage of Bowen*, 168 Wn. App. 581, 586, 279 P.3d 885 (2012) (addressing property distribution and child support). A decision is manifestly unreasonable when, given the facts and applicable legal standard, "'it is outside the range of acceptable choices.'" *Bowen*, 168 Wn. App. at 586 (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)). "'[I]t is based on untenable grounds if its factual findings are unsupported by the record.'" *Bowen*, 168 Wn. App. at 587 (quoting *Littlefield*, 133 Wn.2d at 47). It is made for untenable reasons if based on an incorrect standard or if the facts do not meet the requirements of the correct standard. *Bowen*, 168 Wn. App. at 587.

Under RCW 26.09.170(1)(b), a court may modify a maintenance obligation when the moving party demonstrates a substantial change in circumstances occurred that the parties did not contemplate at the time of the initial dissolution decree. *Drlik*, 121 Wn. App. at 275. The term "change in circumstances" refers to the obligor spouse's financial ability to pay while accounting

14

for the other spouse's necessities. *In re Marriage of Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001). However, RCW 26.09.170(5)(b) states that "[a]n obligor's voluntary unemployment or voluntary underemployment, by itself, is not a substantial change of circumstances."

Even though Glumac laid off Robert a few days after trial, he waited six weeks after the court entered final orders to file a motion to reduce the maintenance amount based on a job loss. Based on the trial court's unchallenged findings, Robert "continues to have the capacity to earn the amount that he did at the time of trial and his efforts to find employment are less than what the court would expect to see" and he has "substantial liquid funds as noted in his Financial Declaration" and his "bank statements." CP at 755. These facts provide tenable grounds for the trial court to conclude Robert did not establish a substantial change in circumstances. Thus, the trial court did not err in denying Robert's motion for modification of the maintenance awards.

IX.    ATTORNEY FEES

Pamela requests attorney fees on appeal under RCW 26.09.140 and RAP 18.1(a) based on her financial need and Robert's ability to pay. In deciding whether to award attorney fees, we consider the merit of the issues on appeal and the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay. *In re Marriage of Kim,* 179 Wn. App. 232, 256, 317 P.3d 555 (2014).

Based on the parties' financial declarations, the trial court's equalized property distribution, and the $15,000 the trial court already awarded Pamela for her attorney fees on appeal, we deny Pamela's request.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Johanson, P.J.

_____
Lee, J.